ELFRING *et al. v*, NEW BIRDSALL CO,

1. Plaintiff signed an order for the purchase of a traction machine, to be shipped to defendant's agents at the place of sale, agreeing to accept the property subject to the conditions printed thereon, and agreeing to pay a specified sum and deliver certain secondhand machinery in part payment. The order specified that it was subject to acceptance by defendant, and that no agent had any power to bind defendant by any

agreement additional to the contract, or waive any of its conditions. Defendant's agents had no authority to receive, but agreed to accept, the secondhand machinery in part payment, which was delivered to them on the day the order was given. Held, in an action by plaintiff for an alleged breach of contract by defendant's refusal to ship the machinery, that plaintiff was not entitled to recover the value of the secondhand machinery; there being no evidence that defendant ratified the act of its agents in taking it in payment.

2. Where, in an action for breach of a contract, for the sale of certain machinery, a telegram to defendant's agents was admitted in evidence without objection, in which defendant stated that it expected to fill all orders the next week in full, it was not error to permit such witness to testify what orders which witness had sent were then pending in the company's office, for the the purpose of ascertaining the orders referred to in the telegram.

3. Where an action for breach of a contract for the sale of machinery depended on whether or not the order for the machinery had been accepted by defendant, it was not error to permit a witness to state that he had seen an order in the possession of defendant's agent; the fact that defendant received and retained the order being undisputed.

4. In an action for breach of a contract for the sale of machinery, a letter written by defendant's general agent to its selling agents, referring to the machinery, and concluding with the words, "D. knows all about these matters, and anything you want to know, you talk to him about it, and he will tell you," etc., was admissible, as showing D.'s authority as defendant's agent, as bearing on statements made by him.

5. In an action for breach of a contract for the sale of machinery, defendant's secretary testified that the order was declined the day it was received. The comprny, however, telegraphed the selling agents that it expected to fill all their orders the next week in full; and plaintiff had been informed by the selling agents that the machinery was on the road and by another agent he was directed to go to the railway station and ascertain when it would be received, and, on his ascertaining that it had not been received by the railroad, the agent informed him that a part of the machinery, at least, had been shipped, and endeavored to sell him another machine in place of the balance. Held, that whether defendant accepted the order was a question for the jury.

6: Where, in an action for breach of contract for the sale of machinery, plaintiff was allowed $500 for old machinery sold to defendant in part payment of the machinery purchased, and $450 damages for breach of the contract, and it was held on appeal that plaintiff was not entitled to recover for the secondhand machinery, the recovery being separable, the judgment would be modified without reversal.

(Opinion filed October 7, 1902.)

Appeal from circuit court, Codington county. Hon. JULIAN BENNETT, Judge.

Action by John H. Elfring and others against the New Birdsall Company. Judgment for plaintiffs, and defendant appeals. Modified.

The facts are stated in the opinion.

*George W. Case,* for appellant.

Agencies cannot be established by the admissions or statements of the agent. Gordon v. Loan & Trust Co. 71 N. W. 556; Plano Co. v. Root, 54 N. W. 924; Lovering Brown Co. v. Bank of Buffalo, 75 N. W. 923; La Rue v. St. Anthony and D. Elevator Company, 3 S. D. 637. When the agent has not the possession of the goods and no other indicia of authority and is only authorized to sell, the purchaser pays the agent at his peril, and it devolves upon the plaintiff to show that the agent was authorized to receive payment. Kane v. Barstow, 16 Am. Rep. 490; Butler v. Dorman, 30 Am. Rep. 795; Higgins v. Moore, 34 N. Y. 417; Crosby v. Hill, 39 Ohio St. 100. Independent of the controlling usage to the contrary, a traveling salesman, or agent merely to solicit orders for goods, has no implied authority to receive payments therefor. Clark v. Smith, 88 Ill. 298; Clough v. Whitcomb, 105 Mass. 482; Korneman v. Monaghan, 24 Mich. 36; Janney v. Boyd, 30 Minn. 319.

Knowledge of all material facts and circumstances is an essential element of effective ratification; without such knowledge the adoption of the acts of an unauthorized agent, or one who has exceeded his authority, will not bind the principal, but on the contrary, if he has given his assent while in ignorance of the facts of the case, he may, on being informed, disavow the unauthorized transaction. Dean v. Bassett, 57 Cal. 640; Miller v. Board of Education, 44 Cal. 166; Hurley v. Watson, 36 N. W. 726; Dodge v. McDonnell, 14 Wis. 600; The Aetna Ins. Co. v. Northwestern Iron Co., 21 Wis. 465; Humphrey v. Havens, 14 Minn. 298; Hunt v. Pitts Ag. Works, 72 N. W. 813; Moyle v. Cong. Society, 50 Pac. 806; O'Shay v. Rice, 67 N. W. 308; Cram v. Sickel, 71 N. W. 724; Meecham on Agencies, Sections 128 and 129.

*John B. Hanten* and *M. E. Sheldon,* for respondent,

The principal is charged with the knowledge of the agent. Parker v. Randolph 10 S. D. 402, 81 N. W. 951; Chase v. Redfield Creamery Co. 12 S. D. 529 81 N. W. 951. Ratification of a contract made by an agent unauthorized to do so, is a question for the jury. Vol. 1, page 1195, 2nd Ed'n Am. and Eng. Enc. of Law.

HANEY, P. J. In this action the plaintiffs seek to recover damages for the alleged breach of a contract to sell certain threshing machinery. They reside at or near Watertown, in this state. The defendant is a corporation doing business at Auburn, in the state of New York. On July 27, 1898, an order signed by the plaintiffs, addressed to the defendant, at Auburn, was mailed at Watertown. It was written on a blank furnished by the defendant, and contained, inter alia, the following pro-

visions and conditions: "This order is taken subject to the approval of the New Birdsall Company of Auburn, N. Y.   * * * We hereby order from you:  One Birdsall traction straw-burner engine.   * * *  To be shipped by the road you think best and cheapest. at once, 1898, to or in care of Hess & Rau, at Watertown.  This certifies that the undersigned agree to receive this machinery on arrival, subject to all the conditions of the warranty printed below, and pay in cash the freight and charges from the factory; and we also agree to pay to your order the further sum of $2,800, at the time and place of delivery named, as follows:  Cash by one M. E. Birdsall engine, 10 H. P., & Advance Sep., $500; note due Sept. 1, 1898, $1,000; note due Sept. 1, 1899, $700; note due Sept. 1, 1900, $600.  Said notes to be made payable to the order of the New Birdsall Company, payable in bank, with interest at 7 per cent. from date of delivery of machine.  * * *  And it is expressly understood that no agent has any power whatever to bind the New Birdsall Company by any agreement preliminary to or collateral with or additional to the contract herein set out, or to waive any of the conditions of this agreement."  The secondhand machinery mentioned therein was delivered to Hess & Rau, defendant's local agents, on the same day the order was signed. It was not returned to the plaintiffs, the new machinery was not delivered, and this action was instituted, resulting in a judgment in favor of the plaintiffs, from which, and from an order denying its motion for a new trial, the defendant appealed.

The jury found the value of the secondhand machinery to be $500, and the plaintiffs' damages by reason of defendant's failure to promptly ship the new machinery to be $450   It ap-

pears from the plaintiff's own testimony that the order was taken and sent in by Albert Schrader, one of defendant's traveling salesmen. It also appears beyond controversy that neither Schrader nor Hess & Rau was authorized to accept secondhand machinery in payment of machinery sold by the defendant. There is no evidence whatever tending to show that the company ratified the acts of its agents in receiving secondhand machinery, and, as it was delivered to Hess & Rau prior to the time provided for in the order, it was not delivered to the defendant. Schull v. New Birdsall Co., 15 S. D. —, 86 N. W. 654. Whether or not the order was subsequently approved, defendant was not liable for the value of the secondhand machinery received by its local agents without authority, in the absence of any evidence tending to prove a ratification of their unauthorized act; and the circuit court clearly erred in refusing to direct a verdict in favor of the defendant as to this branch of the case.

In respect to the damages awarded on account of defendant's failure to promptly ship the new machinery, the important inquiry is whether the evidence was sufficient to sustain the finding of the jury that the order was approved by the company. Before considering this feature of the case, it will be necessary to review certain rulings on the introduction of evidence. Hess, one of defendant's local agents, called as a witness on behalf of the plaintiffs, testified: "I have seen Exhibit 8 before, in our office. It was delivered here by the telegraph company. We sent a telegram to the company before we received it, or a letter. This telegram is in reply to it. We have no copy of the telegram we sent to which this was the reply. I have not got it in my possession. I think it is in

16 S. D.—17

our office.   Q. You may state what orders, if any, you had at that time that you had sent in to the company?   (To which question defendant's counsel objected as imcompetent and immaterial and not the best evidence, which objection was by the court overruled, and exception taken by defendant's counsel.) A. We had the order of Robert Schull; the Elfring and Betz order.   These were the only two orders we had at the time. We had no other orders sent in to the company at the time of the receipt of this telegram,   (Exhibit 8 offered and received in evidence: 'The Western Union Telegraph Company, Auburn, N. Y. Hess & Rau, Watertown, S. D.:   Cannot give exact days. Expect to fill all orders next week in full.   The New Birdsall Company. ' ")   It will be observed there was no objection made to the introduction of the exhibit itself, and there was certainly no error in permitting the witness to state what orders in which Hess & Rau were interested, were then in the company's office, for the purpose of ascertaining what orders were referred to in the telegram.   The question objected to was entirely proper, as laying the foundation for the telegram; and, as there was no objection to the telegram itself, we cannot discover any just cause of complaint on the part of the defendant.   If the telegram did not refer to all the orders received from the Watertown agents, or if it did not refer to the order involved in this action, such fact should have been shown by further evidence on the part of the defendant.   The same witness was allowed to state, over defendant's objections, that he had seen the original order in possession of Mr. Doolittle, one of defendant's agents.   There was no reversible error in this ruling.   The evidence proved nothing but the undisputed fact that the defendant had received and retain-

ed possession of the original order.    Exhibit 10 is a letter from
a general agent of the defendant at Fond du Lac, Wis., who
had charge of the territory wherein this controversy arose, re-
ceived by Hess & Rau, in which the machine ordered by the
plaintiffs is referred to, and which concludes with these words:
"Mr. Doolittle knows all about these matters, and anything
you want to know, you ask him about it, and he will tell you
all about it, as I have given him full instructions." This ex-
hibit was admissible for the purpose of showing Mr. Doolittle's
authority as an agent of the company, and was material in con-
nection with certain statements made by Doolittle regarding
the shipment of the ordered machinery.

Finding no reversible errors relating to the introduction
of evidence affecting the branch of the case now under consid-
eration, we proceed to consider whether it was sufficient to sus-
tain the finding that the order signed by the plaintiffs was ap-
proved by the defendant.    The instrument itself, when intro-
duced in evidence by the plaintiffs, contained this indorsement:
"Declined August 1, '98."    The secretary and manager of the
defendant corporation testified: "The order was declined the
same day it was received.    Defendant declined to approve the
order or to accept it.    I represented the company in declining
to accept the order.    I wrote a letter declining the order io Mr.
A. C. Dallman, at Fon du Lac, Wisconsin—the agent of that
territory from whom we received it.    The order came from
him to us.    It did not come directly from Hess & Rau to us.
There has never been anything done towards carrying out this
order."    Opposed to this were the inferences arising from the
telegram heretofore mentioned, and the following testimony of
one of the plaintiffs, which was received without objection: "I

received information on Saturday, the 6th of August that my order had been accepted. I received this information from Mr. Wilson. I had not received information from anybody that my order, had not been accepted. I was informed by Mr. Wilson and Mr. Hess that my machine—the one we had ordered—was on the road, and would be in Watertown on such and such a date. * * * I called at Hess & Rau's shop after the 10th of August for the machinery, and they told me that Mr. Doolittle was in town, at the Arcade Hotel, and that I should go and talk with him. I called there, and they told me he was not there. I went back to the shop, and Mr. Wilson looked out of the door and saw him at the Kampeska House. I went up to him and asked him if he was the representative for the New Birdsall Company. He told me that was his business. I told him I had ordered a machine of the company, and expected it here. He gave me the shipping bill, and told me it was on the road. He told me I might go down to the North·western station, and find out when it would be here. I went there, and they told me there was no such car on the division yet. I came back and gave him the shipping bill back again, and that ended the conversation until about 11 o'clock, when I met him again. He then told me that he did not think the engine was on the car, but my separator was on the car, and he wanted to sell me the engine that stood down by the Great Northern track, and that, if there was not a suspended water tank on that, they would be docked $50. I told him that was not what I ordered; I had ordered a rig· complete. I waited until 4 o'clock in the afternoon, and then countermanded the order. That was August 26th." All of the evidence touching the question of approval has not been reproduced; but enough

has been to show that there was a substantial conflict concerning this issue of fact; and presuming, as we must, that it was submitted under proper instructions, the finding of the jury thereon cannot be disturbed.

There being no reversible error affecting the amount of the plaintiffs' recovery on account of defendant's failure to promptly ship the new machinery, and as such recovery is independent of, and not affected by, any errors relating to the value of the secondhand machinery, we think the judgment below should be modified by reducing its amount from $950 to $450, with interest, costs, and disbursements. Because of the substantial character of this modification, appellant will be allowed the same costs and disbursements as if the judgment were reversed. The action is remanded, with directions to the circuit court to modify its judgment in accordance with this decision.