## KIME v. BANK OF EDGEMONT, S. D.

Where, in an action of claim and delivery for certain steers which defendant claimed under a chattel mortgage, the answer alleged that on the mortgagor's default defendant took possession of the property described in the complaint and foreclosed the mortgage as provided by law, defendant was estopped to claim that it had not taken the steers described in the complaint.

Where, in an action of claim and delivery for certain steers, defendant claimed title under a chattel mortgage from the sellers of the steers to plaintiff, evidence as to the amount of stock in the mortgagor's possession a year after the mortgage was given was irrelevant.

Where defendant claimed certain steers sued for under a renewal chattel mortgage, and the first mortgage did not cover such steers, whether plaintiff bought any of the property covered by the first mortgage was immaterial.

In an action to recover certain steers, plaintiff had testified on direct examination as to the time he purchased the steers without objection. After defendant had rested, plaintiff was allowed to answer when he became the owner of the steers described in his complaint over an objection that it was not rebuttal and detailed the circumstances connected with his purchase. Held, that the court's ruling was a proper exercise of discretion, especially as the only defense raised was defendant's right to the steers under a renewal chattel mortgage.

Where, in an action to recover certain steers, defendant was not entitled to recover in any event, it was not prejudiced by inaccurate instructions.

Error, in assessing damages for the wrongful detention of certain

steers sued for resulting from an honest mistake, was cured by plaintiff's remission of the damages allowed therefor.

Defendant claimed the right to certain steers sued for under a renewal chattel mortgage from the sellers of the steers to plaintiff. The steers in controversy were not covered by the original mortgage, but the renewal mortgage purported to cover 31 two year old steers of a certain brand and declared the property to be all the stock the mortgagors then owned. Held, that without proof that the sellers of the steers to plaintiff did not own and have in their possession 31 two year old steers at the time they executed the renewal mortgage, in addition to those plaintiff had purchased and of which he had not yet taken possession, the defense was not established.

(Opinion filed, February 17, 1909.)

Appeal from Circuit Court, Fall River County. Hon. LEVI McGEE, Judge.

Action by George W. Kime against the Bank of Edgemont, S. D. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

*Chauncey L. Wood* and *Andrew J. Kellar,* for appellant.

A jury that was so prejudiced against the defendant as to render a verdict for $100.00 damages when the evidence merely tended to show $8.65, were also necessarily influenced by the same degree of prejudice, in determining the other questions of fact submitted to them, and that their entire verdict in this case, is tainted with prejudice and invalidated by it, and the verdict should have been set aside and a new trial granted. Murry v. Leonard, 11 S. D. 22; 1st Southerland on Damages, pp. 813-814; Railroad Co. v. Develle, 44 Kan. 394; S. C. 24 Pac. 500; Railroad Co. v. Ploskatt, 47 Kan. 107; S. C. 26 Pac. 401; Railway Co. v. Coon, 69 Tex. 730; S. C. 7 S. W. 492; Cossin v. Delavy, 38 N. Y. 178. Any direct or indirect assumption of fact by the court in its instructions to the jury is error. People v. Williams, 17 Cal. 142; People v. Buster, 53 Cal. 612; Vroman v. Rogers, 5 N. Y., S. 426; Turner v. O'Brien, 11 Neb. 108; Texas L. & L. Co. v. Watson, 22 S. W. 873; Jones v. Randolph, 104 U. S. 108; Schoenberg v. Voigt, 36 Mich. 310; People v. Strong, 30 Cal. 151.

*Eastman & Dudley,* for respondent.

The first mortgage was filed in Fall River county, the county where the defendant bank was doing business, and not in the

county of Custer, the county where it is admitted that the cattle included therein ranged and were kept, was in fact and in law no record of the mortgage, and therefore no notice, and is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers in good faith for value. Rev. C. C. 2085, 2086; Kimball v. Kirby, 4 S. D. 152. In a verdict in claim and delivery it is not essential that the jury find any damages, even though damages are plead. Cobby on Replevin, Sec. 1074; Gaines v. White, 1 S. D. 434. The matter of damages is not an essential element in a verdict in claim and delivery; and not being essential to the completeness or validity of the verdict may be remitted without in any manner affecting the prime object or main issue determined by the verdict. Cobby on Replevin, 1088.

WHITING, J. This is an action in claim and delivery, brought by the respondent against the defendant company to recover the possession of 11 head of steers, which the said respondent, as plaintiff, claimed had been taken from his possession and wrongfully detained by the said appellant, defendant in the lower court. Plaintiff sought to recover the value thereof, in case the property could not be delivered, together with $200 for damages for the unlawful detention. Plaintiff's complaint describes the steers as 11 head, three years old, a part of which are branded $\frac{D}{K}$ on the left side, and a part branded $\overline{V}$; both of said brands being vented with the vent of the owner of said brand, "—" below the above brand. All of said steers were also branded with $\underline{K}$ on the left side, which is the brand owned and run by the plaintiff. The plaintiff alleged this wrongful taking as occurring on December 29, 1903, and that before the commencement of action he had demanded the return of the property. Defendant, answering, alleges: That November 4, 1902, one McQueen and one Barger were the owners and in the possession of the property described in plaintiff's complaint, together with other cattle and horses; that on said date defendant loaned McQueen & Barger a large sum of money, taking from them their note due November 4, 1903; that to secure said note they took a chattel mortgage on the property described in plaintiff's complaint, together with other property; that said

mortgage was duly filed on November 10, 1902; that the mortgagors failed to pay the note or interest; that upon said default the defendant took possession of the property described in the complaint herein and duly foreclosed said mortgage as provided by law; that the officer foreclosing made report as provided by law; and that the amount realized from the foreclosure was insufficient to pay the debt. Replying, the plaintiff claimed that he purchased. said steers of McQueen & Barger prior to November 4, 1902, and that said McQueen & Barger were not the owners of said steers on November 4, 1902, and alleged that the defendant knew of said purchase before the execution of said mortgage, and denied that the said mortgage was made at the time.claimed.

The above are the material allegations of the pleadings. Plaintiff offered testimony, which was received, which, if believed, would tend to show: That on or about October 22, 1902, he entered into a contract for the purchase of 15 head of steers from McQueen & Barger at an agreed price; that on that date 7 head were separated from a large number, branded and taken in possession by the plaintiff; that he made a partial payment, and a day or two later another small payment; that he was about to ship some stock to market, and agreed that upon his return he would pay McQueen & Barger, and it appears without dispute that on November 6, 1902, he gave a check to McQueen for the amount which he claims was the balance due, and which together with the other payments would amount to the sum which he claims he was to give for said stock. The testimony on behalf of plaintiff would also tend to show that after making this contract for purchase, and before the payment of the check above referred to, which was by far the greater part of said purchase price, the plaintiff had a talk with the president of the bank, defendant, advising him that he had made such purchase, and that said bank, through its president, assured him that he was glad he had made the purchase, that they had a mortgage on some of McQueen & Barger's stock, and that the sum plaintiff was to give was more than the stock would bring if shipped. The testimony on behalf of plaintiff also tends to show that the mortgage of November 4, 1902, was not signed by Barger until about November 9th, and plaintiff claims that that was the date he witnessed same.

The evidence on the part of the defendants would go to show that on November 4, 1901, McQueen & Barger, being indebted to the bank, gave their note therefor in the sum of $2,400, secured by a large number of cattle and horses described in chattel mortgage given on that date, which said chattel mortgage described, among others, 18 head of steers, two years old, branded $\frac{D}{K}$ on left side, (which description would describe cattle described in the complaint for the reason that plaintiff testified that the bar under the K was placed on by himself, but does not agree as to age. Said mortgage of November 4, 1901, did not state that the stock therein described was all of the stock belonging to the mortgagors answering said description. The mortgage described the stock as situated in Custer county, and the mortgage was filed in Fall River county. The defense disputes the plaintiff as to the conversation claimed to be had in the latter part of October, 1902, and the defense claims that they were never advised that the plaintiff had bought or contracted to buy the steers in question. The defense also introduced proof to show: That the mortgage dated November 4, 1902, was given on that date; that before it was taken by the bank the president of the bank interviewed plaintiff and told him that the bank had been asked to renew the papers of the mortgagors; that the mortgagors represented that they had a certain amount of stock, considerable more than in the old mortgage, and asked the plaintiff if it was true; that the plaintiff assured them that he believed it was; that the plaintiff was present when the new mortgage was taken which mortgage secured the original debt of $2,400, together with another sum; that at that time the matter of the first mortgage was all talked over; and that on that date, November 4, 1902, said new mortgage was executed by both the mortgagors and witnessed by witnesses, among whom was the plaintiff. Said mortgage of November 4, 1902, purports to cover all the stock owned by the mortgagors. Defendant describes, among other stock not material to this suit, 3 head, three year old steers, all branded $\frac{D}{K}$ on the left side and 31 two year old steers branded $\frac{D}{K}$ on the left side.

Upon the trial defendant offered evidence to show that the stock sold did not answer the description contained in the com-

plaint. This evidence was rejected, and exception taken, and such exceptions preserved on appeal. The ruling of the lower court is clearly correct, because by its answer defendant had estopped itself from claiming that it had not taken the property described in the complaint, and no request was made to amend the answer. The defendant also complains that the court wrongfully denied its right to ask certain questions of the sheriff which it was claimed would have tended to show the amount of stock owned by McQueen & Barger when the mortgage was given; but it is clear that the ruling of the court was right because it related to what an officer found a year after the mortgage was given, and in no manner tended to show what property was owned by or in possession of the mortgagors at date of mortgage, and could not be received to show that the property sued for was not taken by defendant; the answer, as hereinbefore stated, having admitted this.

Defendant complains because he was not allowed to ask McQueen on cross-examination the following question: "You sold some of this mortgaged property to Kime, didn't you?" This was objected to as improper cross-examination. This ruling was correct in view of the direct examination, and, moreover, the answer would have been immaterial. This question related to property covered by first mortgage, and, as will be hereinafter explained, the first mortgage did not cover the property sued for, and therefore whether Kime bought any of the property that was covered by first mortgage or not was absolutely immaterial.

Defendant also complains because plaintiff was allowed to answer the following question: "Mr. Kime, you may state to the jury when you became the owner of these 11 head of cattle described in your complaint." This was asked of plaintiff after defendant had rested his case and was objected to as not rebuttal, and also as calling for the conclusion and opinion of the witness. This witness had prior thereto on his direct examination testified as to about when he purchased them, and this without objection, and after the above question was asked and answered in rebuttal he went on and detailed the circumstances connected with said purchase, which was certainly within the discretion of the court to allow, especially in view of the issue that the defense had attempted to raise.

The defendant also complains of certain instructions given by the court. One of these instructions is either incorrectly transcribed, or else. the court inadvertently omitted words therefrom. In its present form it is apparently conflicting. The instructions, taken as a whole, we think, are not prejudicial to the defense; but, if technically wrong, we think they were error without injury, for the reasons hereinafter stated. The defense also claimed that the verdict should be set aside because it was the result of passion and prejudice on the part of the jury. They are not entitled to this relief, because they have not a proper record therefor in the specifications of error, only complaining as to the amount of damages which the jury allowed for wrongful detention, and we think that the error of the jury in assessing damages appears to have been an honest mistake, instead of the result of passion, the sum assessed as value of the property not being over a fair valuation of the property, and this error as to amount for wrongful detention undoubtedly came up from the fact that the court failed to call their attention to what they had a right to consider in fixing the amount of damages. Inasmuch as the plaintiff had in the circuit court, before the judgment was rendered, remitted all damages allowed the defendant, there is no ground for complaint.

We have gone quite fully into this case, but, regardless of whether there were errors upon the trial, it is clear to us that the judgment above should be sustained for the reason that, taking the uncontradicted testimony in connection with the evidence offered by the defense, the plaintiff was entitled to a verdict for possession of this stock; and for the following reasons: The mortgage given in 1901 covered 18 head of two year old steers, together with other stock, but did not purport to cover yearlings nor did it purport to cover all the stock owned by the mortgagors. There was ample evidence, which, if believed, would establish a sale by McQueen & Barger to plaintiff of 15 head of two year old steers in the fall of 1902, a sale that would be perfectly good as between the parties thereto. And it appears from the record that it was practically conceded on the trial that such a sale was made, and the court so assumed in giving its instructions to the jury, this part of said instructions was not objected to. The 1901 mort-

gage did not describe the stock purchased by the plaintiff, as this mortgage covered steers which would be three years old in the fall of 1902, and therefore, if plaintiff had received actual notice of the 1901 mortgage, it would be immaterial on the issue raised in this case. This failure of the 1901 mortgage to cover the property sued for disposes of many points which were raised by the defense, who at all times seemed to take the position that the plaintiff bought property that was described in and covered by the first mortgage.

The only question then is: Did the 1902 mortgage cover this stock? If it did, then it might perhaps be good as to a part thereof upon the ground that, even if plaintiff had purchased them before the date of said mortgage, yet they had not passed from the possession of the former owners. The 1902 mortgage purported to cover, among other stock, 31 two year old steers branded $\frac{K}{}$ on left side, and the mortgage declared the property therein described to be all the stock the mortgagors then owned; but this description and declaration in the mortgage is certainly insufficient as against the prima facie case made by plaintiff upon his proof of the purchase of the stock in question. There is absolutely no evidence but that McQueen & Barger owned and had in their possession 31 head of two year old steers at the time they gave this 1902 mortgage, and had this number besides such steers as plaintiff had purchased and of which plaintiff had not yet taken possession; and certainly, without evidence to support it, the jury would have no right to assume that the 1902 mortgage covered any property which the mortgagors had already sold.

For the reasons above stated, we think the trial court would have been justified in submitting to the jury one question, namely, whether the plaintiff had bought the cattle of McQueen & Barger, directing them that, if they so found, then the plaintiff was entitled to a verdict for a return of the property or the value thereof, otherwise defendant to have a verdict for the possession; but as the court assumed that the plaintiff had purchased these cattle, and the defense have nowhere complained of this assumption on the part of the court, and have thus practically admitted the

purchase of said cattle by the plaintiff, and the defendant having failed absolutely in proving that it ever had any mortgage upon the property purchased by the plaintiff, it follows that there could be no reversible error in the record.

The judgment of the lower court and the order denying a new trial are therefore affirmed.