THE STATE HIGHWAY COMMISSION, Appellant v BLOOM, Respondent

(93 N.W.2d 572)

(File No. 9682. Opinion filed December 15, 1958)

**Gunderson, Farrar & Carrell,** Rapid City, **Phil Saunders,** Atty. Gen., **William Coacher, Walter Mueller,** Asst. Attys. Gen., for Plaintiff and Appellant.

**Bangs, McCullen & Butler, H. F. Fellows,** Rapid City, for Defendant Willard Bloom.

BURNS, Circuit Judge. This action was brought by the State Highway Commission of the State of South Dakota as plaintiff, hereinafter referred to as the State, to condemn land belonging to the defendant, Willard Bloom, for highway purposes for reconstruction of a part of State Trunk Highway No. 16 as a part of the Federal Interstate Highway System. By its verdict the jury awarded to the defendant damages in amount of $25,000 for the property taken and damaged and judgment was entered thereon. Upon denial of its motion for a new trial the State appealed.

The defendant, respondent in this Court, owns 4,040 acres of land in Pennington County, South Dakota, used as a cattle ranch. Except for 640 acres the land is contiguous in the form of a somewhat irregular rectangular area approximately two sections in width east and west by four sections in length north and south. Sections 24 and 25 are in the southwest part of the area. The State seeks to appropriate for highway purposes 18.34 acres in the northeast quarter of Section 25, 9.49 acres in the northeast quarter of the northwest quarter of Section 25 and 23.81 acres in the southwest quarter of Section 24, a total of 51.6 acres belonging to the defendant. The proposed highway will enter this area from the southeast and extend diagonally in a northwesterly direction crossing seven forty-acre governmental subdivisions belonging to the defendant.

Adjoining Section 25 on the south is Section 36, title to the south half of which is held by the defendant. The north half of this section has been leased by the defendant for thirty years or more from the private owner during which time defendant has used it as a part of his ranch operation. Access to the owned land in Section 36 is afforded by use of the leased land as well as by a county road extending north along the west side thereof.

In Section 11 one mile south of Section 36 is an

eighty-acre tract of dry hayland owned by the defendant from which hay is taken and hauled to the ranch headquarters for feeding. This eigthy-acre tract is part of the winter range. The defendant also owns 240 acres of land in Sections 32 and 33 which land is two to three miles east of the land owned in Section 36. This is known as "flood irrigated hay land" where the defendant makes hay and hauls it to the ranch for feeding cattle. It is not part of the summer or winter range.

The proposed highway to be constructed on the defendant's land in Sections 24 and 25 will separate the ranch so that 1,088 acres of defendant's land will lie south of the projected highway and approximately 2,900 acres will lie north thereof. There will be summer and winter pasture on both sides of the highway. The house and buildings are located in the south central part of Section 24 north of the proposed highway and the well and a corral are located in the north central part of Section 25 south of the proposed highway. This controlled access interstate highway as constructed will be three hundred feet wide with no intersections at grade. An interchange on a county road between Sections 24 and 25 will provide a crossing for vehicles. There will be a ten foot by ten foot underpass at a point under the highway between the buildings on the north and the well on the south and a seven foot by seven foot underpass about a half mile northwest thereof. These underpasses intended for cattle passes will be three hundred feet long with covered portions of fifty-eight feet under one lane of travel and fifty-two feet under the other lane of travel with a ten-foot air space at the middle point.

At an early stage of the trial the defendant offered in evidence the plat, Exhibit A, upon which the governmental subdivisions owned by the defendant were shown in red. Upon attempting to explain that certain forty-acre subdivisions had been erroneously marked in red as owned land when in fact such were government permit land or privately owned leased land, the State made and reserved a standing objection to evidence as to government permit land and privately owned leased land. An attempt by counsel for defendant to explain the purpose was cut short

by the court overruling the objection. Thereupon it was shown that four forty-acre subdivisions in Section 7 marked with crosses were not owned by respondent but had been leased by him from a private owner since 1936 and by his father before that, and that four forty-acre subdivisions making up the northwest quarter of Section 24 also marked with crosses were government permit land. Thereafter, the direct testimony of the respondent and his several witnesses was limited to the owned land. Such testimony as there was as to the permit land and leased land was brought out by cross-examination on behalf of the State. Defendant and his witnesses gave their opinions as to the value of the owned land before and after the taking. Several of them when asked on cross-examination whether they took into account the government permit land either said they did not or that such would make no difference in the value of the owned land.

■ It was the State that put into the record the lease agreement between the United States Department of Agriculture and the Eastern Pennington County Cooperative Grazing District and the rules and regulations governing grazing permits. The State also produced a map showing the government land in such grazing district. Over objection of the defendant the State showed that the defendant had a preference grazing permit from the Government for 132 animal units and a temporary permit for 1957 for 110 animal units in accordance with the regulations of the grazing district. Upon such a record the State cannot be heard to complain that there was evidence received as to government permit land. In any event we have recently held that in determining the value of owned land used as a base for ranching purposes it is proper to take in consideration such grazing permits as an appurtenant element of value. State Highway Commission v. Fortune, (two cases) 77 S.D. 302, 91 N.W.2d 675. The same principle applies to the privately owned land which has been leased for grazing purposes by the defendant for thirty years. Such leased quarter section is completely surrounded by defendant's land. It is a small parcel of grazing land of such a character and so located that it is adapted for use only as

a part of a larger grazing unit. It is reasonably certain that such land will be available for continued use in the future as grazing land under lease by the owner of the surrounding lands. Its availability for rental and accessibilty for use for grazing purposes under the circumstances shown is an appurtenant element of value of the base land for ranching purposes limited by the terms and likely duration of the lease and the possibility of its termination.

In Instruction No. 4 stating the measure of damages, in Instruction No. 5 defining fair market value and in Instruction No. 6 defining just compensation the Court used the term "the entire tract." Instruction No. 10 submitted a form of verdict directing the jury to "find the amount of compensation to be paid to the defendant, Willard Bloom, the owner of the land involved in this proceeding, for his property taken or damaged." A common objection made to these instructions by the State was that they did not distinguish between land owned by the defendant and permit and leased land on which the defendant has a right of pasturage. As pointed out above the defendant made no claim and offered no evidence to support any claim that his owned land had enhanced value by reason of any rights he had to graze cattle on government permit land or leased land. On the part of the defendant the case as to damages was limited to the land to which he had title. Unlike in the case of State Highway Commission v. Fortune, supra, where the ranching unit was repeatedly referred to by total acreage including government permit land which was outlined on the plats as a unit, here the plat Exhibit "A" referred to throughout the trial designated only the owned land except for certain tracts mentioned only for purposes of correcting an error in marking the plat. In view of the record and the instructions as a whole we think that the term "the entire tract" was not misleading and would be understood by the jury to refer to the land owned by the defendant.

■ The State made further objection to the instructions above referred to on the ground that they took from the jury the question of whether or not the non-contiguous portions of the ranch were separate tracts for which com-

pensation should be awarded separately under the applicable statute, SDC Supp. 28.13A09, which requires the jury to "ascertain and return in their verdict the compensation to be paid for each distinct lot or parcel of land or property taken or damaged." In the Fortune cases this Court held that physically separated parcels or tracts of land held in one ownership will be considered as contiguous and will constitute one distinct parcel of land within the meaning of the condemnation statutes if the parts are devoted to a single use. Also it was held that where there is no dispute in the facts, the question whether physically separated parcels of land constitute one parcel because of common or unitary use is a question of law for the Court. In this case there was no dispute as to the title, location and use of the land belonging to the defendant. Therefore, it was for the Court to determine and the Court did determine by the instructions given that there was such unity of title and use as to require consideration of the land as one parcel for determination of any severance damage.

The evidence shows that there was a common, unified use of defendant's land for ranch purposes except for the 240 acre parcel of "flood irrigated hayland." There was no evidence that such parcel was used at any time for grazing cattle but the hay grown thereon was cut and hauled by truck to the ranch. Access to the ranch after the highway is constructed will still be available by way of the county highway over which a crossing will be provided at a point between the parts of Sections 24 and 25 owned by the defendant. Although there was no objection to the evidence received as to the title, location and use of this 240 acre tract, the Court erred in allowing the jury to consider this separate and distinct parcel of land in determining severance damages as if it were a part of the ranch, referred to in the instructions as "the entire tract", under the principle of unitary use.

The State requested an instruction as to benefits in this language taken for the most part from SDC Supp. 28.13A09: "In all cases of taking or damaging property, the jury shall take into consideration the benefits which may accrue to the owner thereof as the result of the

proposed improvement." Under this rule the benefits which may be taken into consideration are not those which may inure to the community in general or to the public in common, but must be those benefits which inure to the owner as to the part of the property not taken proximately resulting from the improvement and which are of such a nature as to increase the market value of that part of the property not taken. 18 Am.Jur., Eminent Domain, §§ 297-301; Annotation, 145 A.L.R. 7, at page 40; Lineburg v. Sandven, 74 N.D. 364, 21 N.W.2d 808. It will be noted that the statute refers to "benefits", but under the provisions of Article VI, Section 13, of the South Dakota Constitution requiring just compensation to be paid for private property taken or damaged for public use, it would not be just to charge an owner whose land is taken for a general benefit received by the public in common. There was no evidence of special benefits to the land not taken. The Court properly rejected the requested instruction.

 Another instruction requested by the State and rejected by the Court was as follows:

"You are instructed that the evidence indicates that the highway proposed to be constructed within the Willard Bloom unit as testified to in this case also runs across U. S. government property which has been deeded to the State of South Dakota for right of way purposes.

"Since the evidence discloses that the defendant Willard Bloom has no superior right to the State of South Dakota, you cannot award any damages because of denial of access by reason of the construction of the proposed highway over government owned property."

In application this requested instruction would have required the jury to have limited the severance damage to that directly caused by the construction and use of the interstate controlled access highway over and upon defendant's land without reference to the fact that the highway as to be constructed over the south half of Section 30 and the southeast quarter of Section 25 upon government land would make it impossible to move the cattle directly back

and forth from the land owned and used for grazing purposes north of the proposed highway to the land owned and used in the ranch operations south of the proposed highway except through the cattle passes to be constructed, two at points on the highway previously indicated and a third cattle pass at a point well to the east side of the southwest quarter of Section 30.

It is true as stated in the Fortune cases that the government under the provisions of 43 U.S.C.A. §§ 315b and 315e had reserved the right to grant and infringed no rights of the defendant by granting easements to the State for construction of the highway upon government owned lands. But the question as to any severance damage to defendant's land not taken caused by the construction and use of the highway would be the same as if the government lands were privately owned and the State had acquired the right to build the highway over them by condemnation or by purchase of rights of way.

Under the taking and damaging clause of our constitution and the condemnation statute referred to, it is a basic rule of this jurisdiction governing compensation for consequential damages that where no part of an owner's land is taken but because of the taking and use of other property so located as to cause damage to an owner's land, such damage is compensable if the consequential injury is peculiar to the owner's land and not of a kind suffered by the public as a whole. This rule has been applied in a number of South Dakota cases involving a change of street grade to the damage of abutting property not physically invaded. Searle v. City of Lead, 10 S.D. 312, 73 N.W. 101, 39 L.R.A. 345; Whittaker v. City of Deadwood, 12 S.D. 608, 82 N.W. 202. See also 18 Am.Jur., Eminent Domain, § 217.

But where a part of an owner's parcel or tract of land is taken for a public improvement such as a public highway the owner is entitled to be compensated for the part taken and for consequential damage to the part not taken even though the consequential damage is of a kind suffered by the public in common. 18 Am.Jur., Eminent Domain, § 265. There was application of this rule in the case of Schuler v. Board of Supervisors, 12 S.D. 460, 81

N.W. 890, 892, in which the Court said: "It is not sufficient that compensation be made for the property taken, but 'just compensation' must also be made for other parts of the property damaged. In whatever manner, therefore, the part remaining shall be damaged by the taking, for such damage the party must be fully compensated. The question therefore in such case is, what amount of money will compensate the party for the loss sustained by reason of the opening of the highway? * * * Incidental loss and damage, present and prospective, may be considered by the jury in fixing damages in this class of cases."

In a number of jurisdictions consequential damages are limited to those caused by the taker's use of the land acquired from the owner of the remaining area. See Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328. But because of difficulty in application many courts have modified the rule, as did the Minnesota Court in the case of City of Crookston v. Erickson, 244 Minn. 321, 69 N.W.2d 909, 914, involving taking of land for a sewage treatment plant, stating: "We therefore modify the rule of the Adams case (Adams v. Chicago, B. & N. R. Co., 39 Minn. 286, 39 N.W. 629, 1 L.R.A. 493) to the extent that, where a part of an owner's land is taken for a public improvement such as this, and the part taken 'constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put,' the owner is entitled to recover the full damage to his remaining property due to such public improvement, even though portions of the public improvement are located on land taken from surrounding owners." See Annotation, 170 A.L.R. 721.

In City of Bristol v. Horter, 73 S.D. 398, 43 N.W.2d 543, 547, the lower Court had limited the damages to the value of the portion of land taken for use as a receiving basin for effluent from a sewage disposal plant. On appeal this Court reversed and, after indicating that the measure of damages was the difference between the value of the entire farm or tract before the portion was taken and its value after the same was taken, stated: "The circumstances surrounding the proposed disposition of effluent may be con-

sidered by the court in this case, or by a jury, in fixing the value of the farms after the taking even though the circumstances 'in no other view could be ground for damages'. Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890, 892. This witness and others similarly questioned were entitled to take into consideration the proposed discharge of effluent from the disposal plant into the sloughs in giving their opinions as to the value of the farms after the taking." This case was an application of the qualifying rule as stated by the Minnesota Court in the City of Crookston case, supra. The damage to the portion of any tract not taken arising from disposition of sewage effluent in the basin formed by use of all of the lands taken could not be separated into parts on the basis of previous ownership of the parts taken or by any other workable method.

Likewise, we think this Court is committed to such principle as applied to a highway improvement by the broad language of the Schuler case above set out. The method of applying the rule to the facts of the present case is indicated by the following language taken from Hyde v. Minnesota D. & P. R. Co., 29 S.D. 220, 136 N.W. 92, 99, 40 L.R.A.,N.S., 48: "He has the right, as the owner of the land, to access to such land and to every part thereof where it abuts upon a highway. This is a right resting upon the ownership of the subject of property and connected with and appurtenant to such subject of property, and is, therefore, a property right. It is a special private right entirely distinct from the public right, and is one that pertains, not only to the part of the highway abutting the owner's land, but extends sufficiently beyond his own premises as to insure him reasonable facilities for connection with those highways in which he has no special rights. Further than this his property rights do not extend, and therefore any interference with a highway beyond the point where one's special rights end is not a 'taking or damaging' of property, and is not the infringement of any right giving rise to action for damages."

The requested instruction which would have limited the severance damage to that caused by the proposed construction and use of the segment of the highway over the

defendant's land was properly rejected. There will also be separation caused by the segment of the highway to be constructed on government owned land having a tendency according to the evidence to make it more difficult and expensive if not impossible to move cattle from the owned land and range lying north thereof to the government permit land lying directly to the south thereof and to the owned land south and west of such segment. Any elements of detriment such as additional labor, expense or inconvenience in the operation of the remaining land as a ranch which were appreciable and substantial in nature and had a reasonable tendency to lessen the market value of the land could be taken into consideration. These items of injury are not to be allowed as separate items of damage, but are only to be considered in determining the reduction in value of the remaining tract. For the purpose of determining severance damage to the part not taken, the part of defendant's land taken is to be considered as an integral and inseparable part of a single highway project not limited to the segment of the highway on his land but extending so far as the construction and use of the highway has a reasonable tendency to cause detriment to the part not taken and to reduce the market value of his land not taken from the viewpoint of a ready, able and willing buyer.

Consideration has been given to the State's other requested instructions and the exceptions taken to the Court's refusal to give them. We find no prejudicial error in rejection of such requested instructions for the reason that either the law applicable to the case as set out therein is adequately covered by the Court's instructions or the rules of law advanced thereby are at odds with the principles herein enunciated or are not applicable to the evidence in the case.

On the theory that the defendant in making an exchange of lands with the government to "block-out" or make more compact his ranching unit conducted himself in such manner as to be inconsistent with and impeach his testimony as to the value of his land taken and the damage to the remainder, the State offered to prove by

an employee of the forest service that the basis of the exchange was acre for acre and that after the exchange was arranged the defendant learned of the projected highway but did not request any change in the agreement. The defendant upon cross-examination by the State had admitted the facts offered to be proved. Further, it appears from a letter dated February 9, 1950, to the defendant signed by an attorney acting for the United States Department of Agriculture that the terms for the exchange had been agreed upon long before the highway was planned. Under the circumstances, there was no error to the prejudice of the State in rejecting the offer.

The trial court refused the State's request that the jury view the property under this provision of the statute, SDC Supp. 28.13A09: "Upon the demand of any party to the (condemnation) proceeding, if the court shall deem it necessary, the jury may view the premises under the rules of law for viewing by the jury." Whatever may be the evidentiary effect of a view when allowed, the granting or denying of an order for a view of the premises under this statute rests in the sound discretion of the trial court. 18 Am.Jur., Eminent Domain, § 360; Annotation, 103 A.L.R. 164. If inspection of the property in a condemnation proceeding would be of aid to the jury in making an award for compensation which while fair and just yet would not be so overly generous as to hinder the making of a desired public improvement, the granting of a view should be the rule. A view of the premises by a jury in a condemnation proceeding should be denied only for good and cogent reasons.

In this case the 4,040 acre ranch was eighty miles from the place of trial. It was suggested to the Court that the lands were too wet to be reached. The grazing land was typical of ranch land in the community. No issue had been raised as to the character of the improvements thereon. The separation of the parts of the ranch to be caused by the projected construction and use of the highway could not be determined by a view. The proposed location of the highway and the passes intended for cattle could be shown only by the plats and maps and other

evidence put in the record. In absence of a clear showing of abuse of discretion by the trial court in denying a view by the jury of the premises in a condemnation proceeding, the exercise of the discretion vested in the Court by the statute will not be disturbed on appeal. We find no such abuse of discretion by the trial court in this proceeding.

In argument of its contention that the verdict of the jury was excessive the State makes no point that "the verdict was so excessive as to warrant an inference or conclusion that it is tainted with corruption, passion or prejudice" so as to require that it be set aside under the rule recently restated in Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147, 153, which as applied to that case involving damages for personal injuries is also applicable on review of an award for compensation in a condemnation proceeding. 18 Am.Jur., Eminent Domain, § 377.

The State does contend that the award is excessive in the particular that it is not sustained by the evidence. Several witnesses for the defendant testified as to the value of the ranch before the taking and its value after the taking of the 51.6 acres for the highway without any objection by the State as to their qualifications, the foundation laid therefor or the form of the opinions expressed. The defendant's opinion that his land was worth $40 an acre and would be reduced in value 50% as a result of the separation to be caused by the construction and use of the highway was uniformly supported by his several witnesses. A premise of their opinions was that the cattle underpasses to be provided were so inadequate that it would be most difficult if not impossible to operate the ranch as a unit after the construction of the highway.

The only testimony offered by the State as to the value of the ranch was that of a real estate broker and appraiser of limited general experience and no experience in ranching or with range cattle. He valued the ranch at $25 an acre and fixed the severance damage at $2 an acre limited to the 1088 acres south of the highway without allowance for any severance damage to larger acreage north of the highway. As a basis for his opinion he assumed that the

cattle passes would be sufficient and conceded that if the passes were not sufficient, his appraisal would not be right.

We conclude that the evidence is sufficient to support the award for compensation for the taking and damaging of the defendant's land except to the extent that it was based on an allowance of severance damage to the 240 acre tract of "flood irrigated hayland" which as pointed out above we consider to be a separate and distinct parcel of land. The defendant failed to establish that this physically separated 240 acre tract was so used with the base ranch as in effect to be considered a part thereof under the principle of unitary use. At one point after referring to the eighty-acre tract of "hayland", the defendant did state that "this hayland is a part of my winter range", but in view of the location of the eighty-acre tract of "hayland" immediately adjoining other winter range and the separation of the 240 acre tract of the "flood irrigated hayland" from the range land, we think the defendant is not entitled on such record to the benefit of a principle which should be carefully applied so as not to defeat the provision of the condemnation statute, SDC Supp. 28.13A09, that the jury "shall ascertain and return in their verdict the compensation to be paid for each distinct lot or parcel of land or property taken or damaged."

To what extent did this separate 240 acre tract of "flood irrigated hayland" enter into the determination of the severance damages? Counsel for defendant, anticipating our holding that it was not shown to be a part of the "entire tract" as referred to in the evidence and the instuctions under the principle of unitary use, has argued that because of its location and use and comparatively small acreage such 240 acre tract of "flood irrigated hayland" could have been given very little if any consideration by the jury in determining severance damages. But defendant and his witnesses testified as to the value of the "entire tract" without any attempt to establish a separate value for any subdivision or part of the owned property. The jury had no basis for allowing severance damages except to the "entire tract" which defendant and his witnesses uniformly valued at $40 an acre before the taking. The

damage to the entire remainder as a result of the taking and the separation to be caused by the highway was estimated by defendant's witnesses generally at a 50% reduction in value.

The total award was $25,000. On the basis of the defendant's own value of the 51.6 acres taken at $40 an acre, a mathematical computation demonstrates that the award for severance damage to the remainder, including the 240 acre separate tract, would average $5.75 an acre. To the extent that the award was based on any severance damage to the 240 acre tract of "flood irrigated hayland" it is contrary to law and is excessive in the sense that it is not supported by competent evidence. It may be that the jury in view of the inferences which could be drawn from the evidence that the use of the "flood irrigated hayland" would not be changed or be adversely affected in any way by the construction and use of the highway made no allowance for any severance damage to it, but it is not for the Court to make any such determination.

 Under the provision of the South Dakota Constitution which guarantees a trial by jury in all actions at law it is for the jury to determine the damages to be assessed. Art. VI, § 6, Constitution of South Dakota. And as to a condemnation proceeding, Art. VI, § 13, of the Constitution specifically provides that "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury * * *." So in an action involving a jury question a Court may not substitute its finding for that of the jury by increasing the verdict. Walters v. Gilham, 52 S.D. 82, 216 N.W. 854. Nor can a Court in a condemnation action increase an inadequate award made by the jury. State v. Hammerquist, 67 S.D. 417, 293 N.W.539. But the province of a jury is not invaded when a Court in the exercise of its judicial powers determines as a matter of law that a verdict or an award is not sustained by the evidence or is against the law.

In ordinary actions at law this Court has frequently exercised the power to direct modification of a judgment by reducing the amount thereof to the extent it was based

on an error in the proceedings and could be segregated and determined by computation and to affirm as so modified without remittitur. Elfring v. New Birdsall Co., 16 S.D. 252, 92 N.W. 29; Kime v. Bank of Edgemont, 22 S.D. 630, 119 N.W.1003; O'Neill v. Bennett, 49 S.D. 524, 207 N.W. 543; Newcomer v. Mountain Springs Ice & Cold Storage Co., 63 S.D. 81, 256 N.W. 359.

In an early case, Kidder v. Aaron, 10 S.D. 256, 72 N.W. 893, this Court said: "The rule seems to be that, whenever the prevailing party upon the return of the verdict enters a remittitur for that portion of the same which resulted from the admission of improper evidence, the error thus occasioned is cured thereby, and the practice of setting aside a verdict and granting a new trial unless all damages in excess of the proper amount are remitted has always been a favorite of the courts."

The rule stated by this Court in Kidder v. Aaron, supra, is set out in 3 Am.Jur., Appeal and Error, § 1174 as follows: "It may be said to be a general rule that in all cases where the only error in a judgment is that the amount of the recovery is excessive, and the excess may be so segregated that the Court can distinguish and separate the erroneous part, or the excess is capable of correction by computation, the common practice is either to permit the party recovering the excessive judgment to file a remittitur in the appellate court and affirm the judgment as so modified, or, which amounts in effect to the same, to give him leave to file the remittitur in the trial court and direct the entry of judgment for the modified amount, instead of reversing the judgment and ordering a new trial. The reviewing Court may properly affirm a judgment which includes items or amounts not properly recoverable in the action upon condition that the successful party below remit therefrom the amount of the items or claims improperly allowed, or consent to the reduction of the judgment by that amount." See Annotation, 135 A.L.R. 1186.

In 3 Am.Jur., Appeal and Error, § 1173, there is this further discussion of the rule: "The power of the reviewing court, in proper cases, to order or require a reduction

or remission of the amount recovered as a condition of affirming a judgment, or of denying the reversal of a judgment which is excessive, is quite generally recognized. A party is given the privilege of entering a remittitur of the amount considered excessive in order to save vexatious expenses and prolonged litigation. The proper exercise of this power does not involve the substitution of the court's judgment for that of the jury, or amount to a usurpation by the court of the province of the jury." As applied to a condemnation proceeding the rule is stated in 18 Am.Jur., Eminent Domain, § 377, as follows: "Thus, where it appears that the amount awarded is excessive and is based on evidence that is speculative and conjectural, the appellate court may require a reduction or remission of the amount awarded as a condition of affirming the judgment."

Counsel for the State has urged the Court to expedite the litigation by exercise of its power to order a remittitur. Without making any showing which would call for application of the rule that the award was so excessive as to warrant an inference or conclusion that it is tainted with corruption, passion or prejudice so as to require that it be set aside, counsel argues generally that "a verdict of Twenty-Five Thousand Dollars ($25,000.00) is so grossly disproportionate for grazing land that there can be no (other) conclusion other than the verdict was excessive." The award may be generous but it was determined by a jury in a proceeding where the testimony of numerous citizens, ranchers and experts presented by the defendant on the single question of damages to be awarded by the jury was met by the testimony of only one witness on behalf of the State who conceded that his opinion was based on the assumption that the cattle passes were adequate, an assumption at variance with the opinions of the several ranch operators who testified. On such record there is no power in the Court to reduce the award on remittitur other than to the extent it includes an allowance for severance damages to a separate tract as above pointed out and then only if the excess can be segregated and is capable of correction by computation.

Applying these principles, we think the award is excessive in the sense that it is not supported by competent evidence and is against law as to the allowance in the single award of severance damage to the 240 acre tract of "flood irrigated hayland." Because of the general nature of the evidence as to the value of the entire tract before the taking and the damages to the entire remainder, we deem it a proper method of segregating the amount by which the award is excessive in such sense by deducting from the total award the value of the land taken at the owner's appraisal and dividing the balance by the acreage of the remainder to arrive at an average amount per acre severance damage which multiplied by 240, the number of acres in the separate tract, fixes the amount by which the award is excessive at $1,380. If the defendant shall file in this Court within twenty days from the date of this opinion his election in writing to accept the award reduced by the amount of $1,380, the award will be so reduced and the judgment for such reduced award will be affirmed; otherwise the judgment will be reversed.

RENTTO, P. J., and SMITH, HANSON and BOGUE, JJ., concur.

BURNS, Circuit Judge, sitting for ROBERTS, J., disqualified.