## SCHULER *et al.* v. BOARD OF SUPERVISORS OF LINCOLN TOWNSHIP.

1. It is not reversible error to allow a witness, in answer to a question as to what he considered the damage to land by reason of the laying out of a highway thereon, to state the amount of damages, without giving the value of the land before and after the location of the road.

2. Where the amount in a special finding as the value of land taken for a higway, together with the findings of the other damages, expressed as "damages by diversion of travel." equaled the general verdict, there was no error in refusing a motion for judgment on the special findings.

3. In estimating the amount of damages for the taking of land for highway purposes, the jury may take into consideration the diversion of travel from a former highway on which plaintiff's buildings were located, increase in taxation, expense of building additional fences, and any other facts which the jury find from the evidence decrease the value of the premises.

(Opinion filed January 24, 1900.)

Appeal from circuit court, Clark county. Hon. JULIAN BENNETT, Judge.

Condemation proceedings by the board of supervisors of Lincoln township, Clark county, against Anna Schuler and another. From a judgment of the circuit court increasing the amount of damages awarded defendants, the board appeals. Affirmed.

*S. A. Keenan,* for appellant.

*S. H. Elrod* and *C. G. Sherwood* for respondents.

CORSON, J. The board of supervisors of Lincoln township, Clark county, laid out a highway along the quarter-section line; taking a strip two rods in width of a quarter section be-

longing to Anna Schuler, and of a quarter section belonging to
T. M. Clafin, plaintiffs and respondents herein.   The township
board assessed.the damages of respondent Schuler at $20, and
of respondent Clafin at $15.   Both appealed to the circuit court,
claiming damages in the sum of $310.   The case was tried to a
jury, and a verdict returned in favor of respondent Schuler in
the sum of $220, and in favor of the respondent Clafin in the
sum of $66.   From the judgment entered upon these findings,
the defendant appeals to this court.   While there are a number
of errors assigned, they may all be considered under two heads:
(1) Error of the court in admitting evidence; and (2) error of
the court in denying defendant's motion for a verdict and judg-
ment upon the special findings of the jury.

&#8226; On the trial one LaCraft, called as a witness on the part of
the plaintiffs, in testifying as to the Schuler land, and was ask-
ed the following question: "Considering the disadvantages
which would accrue to this land by reason of having this road
laid out, and also considering the value of the land it would
take. what, in your opinion, would be the damage by reason of
the laying out of this road?" To this question the defendant
interposed the following objection: ' "Objected to by appellant's
counsel for the reason that it assumes a state of facts, that
other damages would be sustained; further, that it suggests
the answer and asks for a conclusion, and is not a proper
measure of damages" The objection was overruled, and the
witness answered, "From four to five hundred dollars." A
similar question was asked the witness as to the Clafin land,
same objection and ruling. and he answered, "About one hun-
dred dollars." Counsel for appellant contends that the over-
ruling of the objections to these questions was clearly error, for

the reason that the witnesss was permitted to testify as to the amount of damages sustained by respondents Schuler and Clafin, which was the ultimate question for the. jury to determine by their verdict.  The learned counsel admits that it would be competent to ask the witness what was the value of the property prior to the location of the road, and what its value would be with the road located as proposed.  In the earlier cases the courts seem to have held that the question propounded in this class of cases should be in the form suggested by counsel for appellant, but in the later cases the form in which the question is asked is not deemed very important, as in either case the answer is the result of the opinion of the witness as to the amount of damages sustained.  In one case it is given in the form of damages sutained; in the other, the value of the land before and after the highway is laid out, —thus making the amount of damages a mere matter of calculation by the jury.  Mr. Jones, in his late work on the Law of Evidence, arrives at the following conclusion: "But the weight of authority sanctions the more reasonable rule that opinions as to the damage sustained in such cases should be received in evidence.  These decisions are based upon the reasoning that inasmuch as the amount of damages in such proceedings depends entirely upon opinions as to the value before and after the condemnation, and as these opinions are competent, it can make no material difference whether the witness gives his opinion as to the amount of damages at once, or whether he is allowed simply to state to the jury his opinion as to values, from which the opinion as to damages must necessarily follow, by the processes of substraction.  The tendency of the later decisions seems to be in favor of this rule."  2 Jones,

Ev. § 390.   Mr. Jones cites quite a number of cases in  support
of the text,—among them, Railway v. Kirby, 44 Ark. 103;
Emmons v. Railway Co., 41 Minn. 133, 42 N. W. 789.   In
the former case the supreme court of Arkansas says· "Wit-
nesses who had personal knowledge of the character and
location of the land, and of the facts in regard to building  the
railroad over it, were permitted to give their opinions as to the
amount of damage sustained thereby, against appellant's ob-
·jection.   The difference in value before and after  the  location
would be a valid test of the damage done, and it would seem to
be immaterial whether the testimony was admitted in this form,
or in answer to a direct question as to the amount of  the  dam-
age.   The latter follows as a mathematical deduction from  the
first.   In either case it must come as an opinion. and  opinions
as to the value of the land before and after location  were  held
admissible by this court in the similar case of Railroad v.  An-
derson, 39 Ark. 167.   Both methods seem to be sustained by
the authorities."   In the latter case the supreme court of Min-
nesota says:   "Upon the trial, expert witnesses were asked,
and permitted to answer. the question what, in  their  opinion,
was the difference between the rental value of the farm with
the railroad fenced, and the rental value with the  railroad  un-
fenced.   Defendant assigns this as error, claiming that the
proper mode of examination is to ask the witness first what
would be the rental value with the road fenced, and then  what
it is with it unfenced, and leave it to the jury to say  what  the
difference is.   Some courts disapprove of the  first  method  of
examination, holding that the latter is the only proper one.
Probably the latter is preferable, inasmuch as. if the witness
gives the rental value with and without the fence, the jury can

see in what ratio or percentage the rental value is, in his opinion, diminished by reason of the want of the fence. But we do not think it a matter of great practical importance. If the opposite party desires to ascertain the basis of the witness' opinion, he can ask these questions on cross-examination. Both modes of examination have been pursued indiscriminately in this state for many years, and the mode followed in the present case has been repeatedly recognized with implied approval by this court." The court committed no reversible error in admitting the evidence in the form it was given.

At the conclusion of the trial the court submitted to the jury questions to which they returned answers as follows: "Q. What do you find the value of the two acres proposed to be taken from the Schuler land for the proposed road? A. Twenty dollars. Q. If you find that said land would suffer other damages aside from the loss of said two acres, state the amount of such damage, and of what such damages consist, and give the amount of each item. A. By the diversion of travel, the damage to the sale of land to the amount of two hundred dollars. Q. What do you find the value of the two acres proposed to be taken from the Clafin land for the proposed road? A. Sixteen dollars. Q. If you find that said land would suffer other damages aside from the loss of said two acres, state the amount of such damages, and of what such damages consist, and give the amount of each item. A. By the diversion of travel, the damage to the sale of land to the amount of fifty dollars. [Signed] Emil Geise, Foreman." The jury also returned a general verdict in favor of the plaintiffs for the sum of $286. After the return of the general and special verdicts, the defendant moved for judgment on the special

verdict on the ground that the special findings of the jury were inconsistent with their general verdict, by reason of which the plaintiffs are entitled to no more damages than the board of supervisors awarded them.    In the view we take of the findings, we think there is no conflict between the special and general verdicts.    While the damages for the diversion of travel itself might not be recoverable in this action, the diversion of travel, together with all the other facts and circumstances proven on the trial connected with that diversion, might lessen the value of the property to the amount specified; and such was probably the view of the case taken by the jury. It appeared from the evidence that the buildings of the plaintiff Schuler had been erected with reference to the range-line road, and, if the new road was opened on the west end of her land, her buildings would be located upon a practically unused highway, and consequently the sale of the property would be diminished.    To transfer the buildings to the line of the new road would necessarily involve a large expense.    It would hardly be expected that the special verdict would set out in detail all the various elements of damage that were taken into consideration by the jury. and hence by the expression "damages by diversion of travel" the jury clearly intended to convey the idea that by the laying out of the new road, and making that the highway for general travel, the plaintiffs would be damaged in the amount stated.    Entering into that amount, the jury undoubtedly intended to include the extra highway taxes, fencing, etc.

The court very properly instructed the jury as follows: "Now, I say to you in this case that the measure of damages in this case, or the amount to which the claimants are entitled, is such an amount as will place them back where they were be-

fore the property was taken.    They are entitled  to a  fair and
just compensation, and that means the payment of such a sum
of money to the owners of the property proposed to  be  taken
or  damaged as will make them whole, so that upon the receipt
by them of the compensation they will not be  any  poorer  by
reason of the property being so taken or damaged." The court,
further proceeding in the charge, after stating to the jury that
they could not allow the plaintiffs damages for  the  extra cost
of fencing, extra amount of highway taxes, and loss by reason
of the diversion of travel, as such, very properly instructed
them that these various elements of damage might  be  taken
into consideration in determining how much the plaintiffs lands
would be depreciated in value by reason  of  the  establishment
of the highway, as that was the ultimate fact to  be  found  by
them.    Our constitution provides that "private property shall
not be taken for public use  or  damaged, without just compen-
sation as determined by a jury, which shall be paid as soon as
it can be ascertained and before possession is taken."  Section
13, Art. 6, Const.    It will be noticed that under this provision
"just compensation" must be made to  the party whose proper-
ty is taken or damaged.    It is  not sufficient that compensation
be made for the property taken, but "just compensation" must
also be made for other  parts of the property damaged.   In
whatever manner, therefore, the part remaining shall be dam-
aged by the taking, for such damage the  party must  be  fully
compensated.    The question therefore  in  such  case  is,  what
amount of money will compensate the party for the loss sus-
tained by reason of the opening of the highway?   In Snyder v.
Railroad Co. 25 Wis. 60, the supreme court of  Wisconsin says:
"If, in consequence of its exposure to these remote injuries, the

property is diminished one half in value, then this decrease in value measures the actual loss to the owner; and, when compensated for this depreciation of the value of his property, he is not receiving compensation for some imaginary injury, some fanciful loss." Incidental loss and damage, present and prospective, may be considered by the jury in fixing damages in this class of cases. 3 Suth. Dam. p. 436. That learned author says that any facts which the jury find from the evidence injure the value of the premises are to be considered in fixing damages, and circumstances are often taken into account that in no other view could be ground for damages. *In Re* Utica, C. & S. V. R. Co., 36 Barb. 456, the supreme court of New York, in its opinion in a case involving a question of damages for taking property for a railroad says: "The true question, I think, is, what will the place as a whole bring in the market without the railroad, and what will the residue bring in the market after the railroad is constructed? And everything which will depreciate the value of that residue is to be taken into account." That court, after specifying a number of elements causing a depreciation of the value of the property, says: "All these are to be included in the estimate of damages. Not that witnesses are to be called upon to estimate damages for each or any of them; for, though they enter into the estimate, the question is, what is the market value of the remainder of the property with the railroad, or, in other words, what is the value of the piece which is taken, and how much is the residue depreciated in its market value by the separation and construction of the railroad?—which two sums, added together, is the amount of the compensation to which the appellant in this case is entitled." The contention of counsel for appellant, therefore, that the jury erred in taking into con-

sideration the diversion of travel from the former highway, on which the plaintiff's buildings were located, increase in taxation, expense of building additional fences, etc., is not tenable. While the plaintiffs could not recover for these as separate and distinct causes of damage, the jury had a right to consider them in determining the question of how much the plaintiffs' lands were depreciated in value by reason of the construction of the proposed highway. As to whether or not the plaintiffs would be damaged by the construction of the highway in question over and above the value of the land taken, there was a sharp conflict in the evidence; but as there was clearly sufficient evidence to sustain the verdicts of the jury, both general and special, this court does not feel called upon to discuss or consider the evidence.

After a careful examination of the whole case, we are of the opinion that the court committed no error either in the admission of evidence, overruling appellant's motion for judgment upon the special findings, or in its instructions to the jury. The judgment and order denying a new trial are affirmed.