SCOVEL, Respondent v. PENNINGTON COUNTY, et al, Appellants

(282 N. W. 524.)

(File No. 8148.   Opinion filed December 10, 1938.)

*Whiting & Wilson,* of Rapid City, for Appellants.

*Walter G. Miser* and *Philip & Leedom,* all of Rapid City, for Respondent.

SMITH, J. The above entitled controversy surrounds a claim of Pennington County against its former sheriff for money collected by that officer for the care and keep, in the county jail, of prisoners of the United States and of Rapid City, a municipal corporation. The litigation arose during the final months of the sheriff's second term. The claim of the county is that the United States and Rapid City have paid the sheriff for the care and keep of their respective prisoners at a rate per prisoner per day in excess of the rate fixed by the county commissioners pursuant to § 5962 of the Revised Code of 1919, as amended (which provides that the sheriff shall receive for boarding a prisoner per day not exceeding One Dollar, to be determined by the board of county commissioners), to-wit, sixty cents per prisoner per day, and that all or a part of that excess should be covered into the county treasury as the additional expense of the county described in §§ 5960 and 5961, Revised Code of 1919. The facts were stipulated. The learned trial court entered judgment for the sheriff, and the county has appealed.

In connection with the custody of prisoners of the United States by the sheriff in the county jails, §§ 5960 and 5961 of the Revised Code of 1919 provide in substance that it shall be the duty of the boards of county commissioners to determine the amount necessary to fully compensate and reimburse the counties for money actually and necessarily expended by them for fuel, light, and other expenses in keeping such prisoners, and after such determination it shall be the duty of the sheriff to charge and col-

lect such amount from the United States in addition to charges allowed by law for persons confined by the authority of the sheriff's own county, and after collecting such amount, to pay the same over to the county treasurer.

■■■ Notwithstanding the fact that the stipulation clearly shows that the actual amount of the county expense is unknown, and expressly states that the board of county commissioners never fixed the amount of such expense, and that the sheriff never did charge or collect the same, the county urges that the court should assume that the amount actually collected by the sheriff in excess of sixty cents per prisoner per day was in fact collected to compensate the county for the additional expense described in §§ 5960 and 5961, supra.

In our opinion, the stipulated facts to which we have adverted foreclose this claim of the county.

Prior to the enactment of § 5966, Comp. Laws 1929, as Chapter 190, Laws of 1917, the sheriff received and retained the fees of his office as his compensation. Chapter 39, Revised Political Code of 1877, § 1830, Revised Political Code of 1903. While Chapter 190, supra, changed the basis of the compensation in certain respects, it did not destroy the right of the sheriff to receive and retain amounts paid to him as board for prisoners. County of Brown v. Smith, 50 S. D. 541, 210 N. W. 742. We turn to the excess payments. If it were to be held that our statutes dealing with the care and custody of Federal prisoners were enacted for the benefit of the United States (Cf. Resolution Sept. 23, 1789, 1 U. S. Statutes 96; Section 5547, Revised Statutes of the U. S., 18 U. S. C. A. § 699; and Section 753b, Title 18 U. S. C. A.), in order that there might be a definite basis upon which it could require the county sheriffs to receive and safely keep its prisoners, but that the Government was privileged in its discretion to waive such provisions and pay the sheriff more than the rate fixed by statute for the board of its prisoners, it would be clear, under such a construction, and in such a situation, that the excess amount would become the property of the sheriff. If, on the other hand, it were to be determined that our statutes place a limitation upon the rate a sheriff can legally charge or receive for the board of Federal prisoners, and that the excess amounts so received constitute over-charges on the part of the sheriff, it would be clear

that such a construction would not give rise to title in the county to such over-charges. Title to excess payments of that character would remain in the Government. Aside from the foregoing possible aspects of the situation, the only basis for a claim of title on the part of the county resides in the provisions of §§ 5960 and 5961, supra, but it is stipulated and agreed that the amount of such additional expense of the county was not fixed by the county commissioners, nor charged nor collected by the sheriff. Therefore, to assume that the excess payments were received by the sheriff as such additional expense of the county would require a court to infer a fact contrary to the express terms of the stipulation of the parties.

■ Whether a court may legitimately indulge any inferences of fact in dealing with a case submitted upon a stipulation of the character here involved need not be determined. Cf. 60 C. J. 85. Certainly it is never permissible for a court to do violence to the stipulation of the parties and indulge an inference of fact in direct contradiction to its express terms. Feniger et al, v. American Ry. Express Co., 226 Mich. 106, 197 N. W. 550; Slaughter v. Protective League Life Insurance Co., 205 Mo. App. 352, 223 S. W. 819.

■ We are as firmly convinced that the claim of the county to payments made by the city in excess of the rate fixed by the board of county commissioners is without foundation.

The statutes make the single following mention of the use of county jails by the cities of the state, in § 6169, Revised Code of 1919, subsection 34: "Every municipal corporation shall have power * * * to use the county jail for the confinement or punishment of offenders, subject to such conditions as are imposed by law, and with the consent of the board of county commissioners." Although § 5960, supra, only makes mention of the "United States or of any state or territory," the county presents this phase of its claim on the theory that the provisions applicable to the care and custody of Federal prisoners govern the care and custody of prisoners of a municipality located within the county. We do not share in that view. Influenced by the thought that the tax payers of a municipality sustain a like relation to the county and contribute directly to the expense of maintaining the jail of their county, and by the fact that the Legislature has made no provision for

payment to the county of any part of the expense incurred in maintaining the jail for the use of municipal prisoners, we are convinced that the Legislature intended to place this whole subject under the control of the board of county commissioners, and that it remains for them to say whether their consent to the use of a jail by a municipality shall be conditioned upon any payment to the county. In connection with this conclusion, it is noteworthy that the statutes do contain provision for the payment of county expense by other counties and states, and by the United States. § 10206, Revised Code of 1919, and § 5960, supra.

We need not now determine whether the rate fixed by the board of county commissioners for the care of prisoners constitutes a limitation upon the amount the sheriff may charge a city of his county for the board of its prisoners. For reasons set forth, supra, if the excess charge was legal, it became the property of the sheriff. If it was illegal and constituted an over-charge, no title to such excess inured to the county.

It does not appear from the stipulation that the county made any charge to the city for the use of the jail, or that the sheriff collected any sum whatever on behalf of the county from the city. Such being the situation, there is no basis in fact for a conclusion that the county has title to any of the funds in the hands of the former sheriff.

It follows that we are in accord with the result reached by the learned trial court, and that its judgment should be, and is, affirmed.

All the Judges concur.