STATE HIGHWAY COMMISSION, Appellant v. R. A.
FORTUNE et al., Respondents
STATE HIGHWAY COMMISSION, Appellant v. HOWARD
FORTUNE et al., Respondents

(91 N.W.2d 675)

(File No. 9683. Opinion filed July 29, 1958)

**Gunderson, Farrar & Carrell,** Rapid City, **Phil Saunders,** Atty. Gen., **Walter Mueller** and **William Coacher,** Asst. Atty. Gen., for Plaintiff and Appellant.

**Bangs, McCullen & Butler, H. F. Fellows,** Rapid City, for Defendants and Respondents R. A. Fortune and Howard Fortune.

BURNS, Circuit Judge. The State Highway Commission of the State of South Dakota on behalf of and in the name of the State of South Dakota, as plaintiff, brought two separate actions in the exercise of its power of eminent domain to condemn lands in Pennington County for highway purposes for construction of an inter-state highway as a part of the Federal Interstate Highway System. In the one action the named defendants are R. A. Fortune and the Atlantic Refining Company. In the other action the named defendants are Howard Fortune, J. B. Ferguson, Gaylord H. Chezum and the Atlantic Refining Company. Upon stipulation of the plaintiff State, appellant in this Court, and the defendants, R. A. Fortune, and Howard Fortune, respondents, the cases were consolidated for trial in the Circuit Court and have been appealed as one action to this Court.

The defendants, R. A. Fortune and Howard Fortune, were served personally with summons and petition, as appears from proof of service in the record, and appeared in the action. The record does not contain any proof of service of process upon the other defendants and no other defendant appeared either in person or by attorney.

In the petitions the State alleged that the other defendants had an interest in the land involved and that a portion of the land is subject to oil leases held by such other defendants. There was no evidence offered as to the interests of the other defendants but the record does show that the fee title to the various parcels to be taken for highway purposes is either in the defendant R. A. Fortune or the defendant Howard Fortune.

During the presentation of the State's case the following proceedings were had:

"Mr. Knight, Assistant Attorney General: It appears in open court and on the record that in the case of the State versus Howard Fortune that in such case J. B. Ferguson and Gaylord H. Chezum

have not answered or appeared in any manner in said case and the plaintiff moves the court for a directed verdict against the aforesaid; and the same is true in the R. A. Fortune case of the Atlantic Refining Company and it not having answered or appeared we make the same motion for directed verdict against said defendant.

"The Court: The motion is granted".

It does not appear that the jury was advised of such motion and action by the Court except in Court's Instruction No. 1 the Court stated: "There were some oil lease defendants who are no longer in this case, the only defendants being R. A. Fortune and Howard Fortune."

After the verdict was rendered awarding the defendants, R. A. Fortune and Howard Fortune, damages in amount of $38,250 for the property taken or damaged, the Court entered a judgment. This judgment contains no finding or recital that the other defendants were served or that they had appeared or were represented in the action unless it can be inferred from the recital "and it further appearing that all of the other named defendant(s) have defaulted and failed to appear and that said defaulting defendants have no right in said verdict, * * *." The judgment decreed, "that the defendants, Atlantic Refining Company, J. B. Ferguson, and Gaylord H. Chezum, are not entitled to any of the compensation determined by the jury and herein awarded."

The defendants, R. A. Fortune and Howard Fortune, moved to dismiss plaintiff's appeal on the ground that the notice of appeal was not served upon the other defendants as required by SDC 33.0703. Recently this Court said: "The term 'adverse party' includes every party whose interest in the subject matter is adverse to or will be adversely affected by a reversal or modification of the judgment appealed from." Morrell Livestock Co. v. Stockman's Commission Co., Inc., 77 S.D. 114, 86 N.W.2d 533, 534.

In Illinois Trust & Savings Bank v. Town of Roscoe, 46 S.D. 477, 194 N.W. 649, 651, the Court held "that the recital in the judgment 'that more than thirty days have

elapsed since the service of said summons and complaint' falls far short of a finding that the summons and complaint were served on defendant, and that more than 30 days had elapsed since such service was made on defendant." But this was on a record that showed affirmatively that proof of service had not been made before judgment was ordered.

 Where the record is silent as to jurisdiction the presumption is in favor of the jurisdiction of a court of general jurisdiction to render a judgment. 30A Am.Jur., Judgments, § 43. Here throughout the entire proceedings the Court and the parties participating assumed that the other defendants had been served with process. No issue as to lack of jurisdiction of the other defendants has been raised in this Court. Therefore, for the purposes of this appeal it will be assumed that the lower court acquired jurisdiction over the other defendants.

The motion for a directed verdict was granted without objection by the remaining defendants. The defendants herein caused to be entered and seek the benefit of the judgment which recites that the other defendants "have no right in said verdict" and decrees that they "are not entitled to any of the compensation determined by the jury and herein awarded."

 SDC 37.4003 relating to pleadings in condemnation cases is as follows: "No pleading other than the petition shall ·be required in such proceeding, unless ordered by the court. If there be adverse claimants for the compensation, the court may require such adverse claimants to interplead, so as to determine fully the rights and interests in such compensation. The only issue that shall be tried by the jury upon the petition shall be the amount of compensation to ·be paid for the property taken. * * *" By service of the summons and petition all named defendants were brought into the action so that the Court acquired jurisdiction to submit to the jury the issue as to the amount of compensation to be paid for the property to be taken and in which the defendants were alleged to have an interest. As applied to this case, had there been asserted by any defendants claims for the compensation adverse to any

other defendants the Court could have required such adverse claimants to interplead, so as to determine fully the rights and interests in such compensation. But the other defendants defaulted and asserted no claims in the compensation adverse to the appearing defendants. Although the petition alleged that the other defendants had an interest, there was no proof thereof, and by granting the motion for a directed verdict against the other defendants without objection by the appearing defendants, the Court in effect determined that they had no interest. Under the circumstances there was no jurisdictional requirement that the other defendants be interpleaded to support the judgment determining the right to the compensation awarded by the jury. All named defendants are bound by the judgment entered.

■ SDC 37.4011 provides: "Upon the return of the verdict the Court shall order the same to be recorded, and shall enter such judgment thereon as the nature of the case may require, and that the plaintiff pay to the persons entitled thereto the amount of compensation ascertained by the verdict * * *". By direction of a verdict against the other defendants and by the judgment the Court determined that the other defendants "are not entitled to any of the compensation determined by the jury and herein awarded." Thus any claims of the other defendants to compensation were put in issue and pursuant to such statutes determined by the judgment which decrees that they have no right to compensation.

The judgment in Morrell Livestock Company v. Stockman's Commission Inc., supra, determined that two appearing defendants and a defaulting defendant were liable jointly and severally to the plaintiff. The two appearing defendants appealed. No notice of appeal was served on the defaulting defendant. The Court pointed out that under SDC 47.0106 "A party to a joint, or joint and several, obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." It followed that a reversal of the judgment on the appeal by the two defendants would have deprived the defaulting defendant of his right

of contribution. He was therefore an adverse party who could be adversely affected by the appeal and was entitled to notice of the Appeal. The Court said: "It is true that if he did default, he cannot be heard to complain about the judgment. He has a right, however, to rely upon this judgment. A right of contribution arises therefrom which should not be taken from him without notice."

■ Because of their default the oil lease defendants cannot complain if the judgment stands. If the judgment falls they will not be adversely affected. They have no interest in the judgment which is adverse to or will be adversely affected by a reversal or modification of the judgment from which the appeal was taken. The motion to dismiss the appeal is denied.

■ We add that if the other defendants were not served, the judgment purporting to determine they had no interest is subject to collateral attack in other proceedings. In any event such claims as they may have are against the State and not against the defendants to whom the award was made.

The record shows the following proceedings had in the trial Court's chambers at the start of the trial:

"Mr. Fellows: In the case against R. A. Fortune, et al, and Howard Fortune, et al, it is stipulated between counsel that the said actions shall be consolidated for trial.

"Mr. Gunderson: Correct.

"Mr. Fellows: It is stipulated further that the land involved in the consolidated actions is now and has been operated by defendants Howard Fortune and R. A. Fortune as a single ranch unit although each of them separately own portions of the land involved in the ranch unit and that they jointly owned and participated in the ranching unit without regard to their separate ownership of portions of the real estate; that the leased land from the Pennington County Grazing Association was leased separately by the two defendants as a part of the single ranching unit operation;

that any and all severance damage which might accrue or be awarded in this action would accrue and should be awarded to the parties jointly and not separately by reason of such operation of the single ranch unit and that one judgment only need be entered in these consolidated actions, which single judgment should include the total award for compensation of every kind to the two parties and that Howard Fortune and R. A. Fortune shall between themselves make a division of such total award, it being contemplated by this stipulation that the action be tried and determined as though both parties were joined in one single action and as though the fee ownership of the lands was joint and as though they were a co-partnership."

Article VI, Section 13, of the South Dakota Constitution provides: "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury * * *." SDC Supp. 28.13A09 states: "If the compensation for all the property taken or damaged is ascertained by the jury upon one trial, they shall ascertain and return in their verdict the compensation to be paid for each distinct lot or parcel of land or property taken or damaged." To the same effect is the general statute SDC 37.4010.

The total acreage to be taken from the two defendants for the highway is 109.49 acres. Howard Fortune holds title to approximately 49 acres and R. A. Fortune holds separate title to approximately 60 acres of the land to be taken.

On the part of the defendants the case was tried and it was submitted to the jury and decided on the theory that the lands belonging to defendants were used as one ranching unit. We recognize that separate parcels or tracts of land held in one ownership will be considered as contiguous and may constitute one parcel of land within the meaning of the condemnation statutes if the parts are devoted to a single use. But this principle by which separate parcels of land are deemed contiguous

because of a unified or common use is not applicable to lands owned by different parties. Since the measure of damages is the difference between the value of the property before the taking and its value after the taking, which includes a proper allowance for severance, the damages to be awarded the separate owners must be determined separately. In 6 A.L.R.2d 1197-1237, there is an annotation on the topic, "Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property." At page 1205 of the annotation the note writer states: " 'This principle cannot be extended to cover lands owned by different proprietors, although contiguous and used under one management and for a common purpose. Claims for damages in proceedings of this character are personal, and must be asserted in the name of the actual owners of the lands affected. One person may not recover damages sustained by another, and manifestly special damages suffered by one proprietor could not be compensated by benefits accruing to another.' "

The California Court in a recent case stated: "In condemnation proceeding there must be unity of title, contiguity of use, and unity of use in order to entitle land owner to severance damages." City of Menlo Park v. Artino, 151 Cal.App.2d 261, 311 P.2d 135, 136. In the case of Duggan v. State, 214 Iowa 230, 242 N.W. 98, 99, the Iowa Court held that in condemnation proceedings different owners are not entitled to secure damages by attaching their separate tracts to that subjected to improvement. In that case the highway was to be built over a tract owned jointly by a brother and sister. Adjacent to the tract was land owned separately by the sister which was contiguous to land owned by the brother. The Iowa Court indicated that it subscribed to the rule that where a tract of land is owned by one person and used for a single purpose, the legal governmental subdivisions are not material. But the Court said:

"We have had our attention called to no case, nor have we been able to find one, where a court has squarely held that, where two or more tracts of land are involved, separately owned by

different persons, they may be combined in one condemnation proceedings. It is quite apparent that the larger the tract of land involved the larger the damages will be, and it is our opinion that, where different tracts are involved, owned by different persons, and the improvement touches or affects only one tract, it would be wholly inequitable to allow other parties owning individual different tracts to attach their land to the tract through which the improvement runs and thereby secure damages to which they are not entitled; or thereby share in the damages suffered by the tract of land through which the improvement runs."

When there is no dispute in the facts, the question whether physically separated parcels of land constitute one parcel because of common use, is a question of law for the Court. By the stipulation the attorneys for the parties purported to take the question from the Court and to say that lands held in different ownership constituted one parcel under this principle of unitary use. Further, recognizing that the damages to the two separate owners were different, they purported to agree that the owners themselves should "between themselves make a division of such total award."

It appears from the evidence as well as the stipulation itself that the defendants had "separate ownership of portions of the real estate" and "that the leased land from the Pennington County Grazing Association was leased separately by the two defendants." In the face of such facts a stipulation "that any and all severance damage which might accrue or be awarded in this action would accrue and should be awarded to the parties jointly and not separately by reason of such operation of the single ranch unit" is a stipulation as to the measure of damages to be applied, that is, a stipulation as to the legal effect of facts and the law of the case.

"An attorney of record, by virtue of his employment as such, subject to the approval of the court, has implied authority to do all acts necessary and proper to the regular and orderly conduct of the case and the protection and

promotion of his client's interests, which affect the remedy only, and not the cause of action, and which are ancillary or incidental to the general authority conferred." 5 Am.Jur., Attorneys at Law, § 85. To the extent that the stipulation was an agreement to expedite the trial by consolidation and by dispensing with the necessity for proving admitted facts, it was a proper exercise of the authority of the attorney of record for the State. Such procedure is to be approved.

A stipulation that the defendants were joint owners of the tracts involved would have been a stipulation of facts. But a stipulation that the damages should be assessed by the jury as if the defendants were joint owners because of the fact that they operated as a ranch unit is a stipulation as to the legal effect of facts. In the case of Bitterman v. Reinfeld, 75 S.D. 73, 59 N.W.2d 548, 549, the attorneys at a pretrial conference had agreed that the contract involved created a joint enterprise. As to such stipulation the Court said:

> "The above stipulation related to the legal effect of a contract, the legal conclusion to be drawn from a state of facts. It was upon a question of law which must be decided by the court, uninfluenced by stipulation of the parties or counsel. Luce v. Ash, 28 S.D. 109, 132 N.W. 708, 60 C.J., Stipulations, § 23; cf. Englund v. Berg, 69 S.D. 211, 8 N.W.2d 861. The legal principles applicable to the facts established at the trial must be applied regardless of any stipulation as to the law of the case that may have been entered into by the parties." See also 5 Am.Jur., Attorneys at Laws, § 94.

The defendants in their brief say "The case was tried and judgment awarded on the theory embodied in this stipulation." They then invoke the rule that an appellate court will not hear a party on a theory not asserted and relied upon in the lower court, citing Sweet v. Purinton, 40 S.D. 17, 166 N.W. 161, in which findings were made at variance with the theory of the pleadings but in harmony with issues as tried without objection by either party;

Leonard v. Leonard, 66 S.D. 202, 281 N.W. 90, an action for separate maintenance in which a recriminatory defense was first asserted on appeal from a decree of divorce awarded the husband; Kindley v. Williams, 76 S.D. 225, 76 N. W.2d 227, 57 A.L.R.2d 1070, in which the theory of equitable estoppel was first raised on appeal, and Scovel v. Pennington County, 66 S.D. 311, 282 N.W. 524, where a case was submitted on a stipulation of facts and the court held that it would not indulge an inference of fact in direct contradiction to its express terms.

■■■ The issue to be determined in this case was the amount of compensation to be awarded to the defendants for the taking and damaging of their land. It was the duty of the Court to determine and apply the law as to the measure of damages. As has been pointed out a Court is not bound by a stipulation of the parties as to the law. Specifically, in a condemnation case the attorneys cannot stipulate away the force and effect of a statute which requires that the jury "shall ascertain and return in their verdict the compensation to be paid for each distinct lot or parcel of land or property taken or damaged."

Issues raised as to the instructions require a further statement of the facts as to the ownership and location of the land. The defendants, father and son, conduct ranching operations in an area roughly five miles square. Within the area the defendants have fee title to approximately 4200 acres. The record is not clear as to the exact number of acres owned by each but each owns several tracts. They own none of the land jointly. The land is not contiguous. It is grazing land with some hay land. The defendants have grazing permits to use approximately 8000 acres of land belonging to the United States government within the area which permit lands are managed by the Soil Conservation Service and the Eastern Pennington County Grazing District. The permits are held by the defendants separately and give each of them right to graze a specified number of cattle. The grazing rights are not transferable but are preference rights which may follow the land owned in the grazing district under applicable regulations. On this

basis the defendants testified that their ranch unit was composed of between 11,000 and 12,000 acres.

The proposed highway will enter the area at the southeast and traverse the area for about five miles diagonally in a northwesterly direction. The road will sever the area so that 702 acres of the land owned by defendants will lie south of the highway and approximately 3500 acres will be north of the highway. In four sections the road will pass over tracts of land belonging to the defendants which are completely surrounded by government land.

The land of the defendants to be taken for the highway totals 109.49 acres, of which the defendant, Howard Fortune, owns about 49 acres and the defendant, R. A. Fortune, about 60 acres.

Between the defendants' separate tracts the highway will pass over government-owned land by virtue of right-of-way grants from the Government. All of the land which belongs to the Government may be withdrawn from grazing use or be conveyed or be devoted to highway use at any time. The defendants have no title in the government land and no right therein except under their grazing permits which are limited by the provision of 43 U.S.C.A. § 315b which provides: "* * * but the creation of a grazing district or the issuance of a permit pursuant to the provisions of this chapter shall not create any right, title, interest, or estate in or to the lands." Section 315e thereof provides: "Nothing contained in this chapter shall restrict the acquisition, granting or use of permits or rights-of-way within grazing districts under existing law * *."

The case was submitted to the jury on seven instructions. Instruction No. 1 was a general statement as to the nature of the case. Instruction No. 2 advised the jury that the State had the right to appropriate the land and that the only matter for the jury to determine was the compensation to be awarded the defendants for the property taken or damaged. Instruction No. 6 was a stock instruction as to the credibility of the witnesses, and the closing instruction No. 7 told the jury how to proceed in the jury room.

The remaining three instructions given by the Court were as follows:

### "Instruction No. 3

"You are instructed that the defendants in this action are entitled to recover the value of the land taken for highway right-of-way purposes and in addition thereto, the damage the remaining land sustains by reason of the taking. The amount of damages to be awarded to the defendants in this case is the difference between the value of the entire tract before the portion is taken and its value after the same is taken.

### "Instruction No. 4

"In arriving at the value of the entire tract prior to the taking, it may be necessary for you to first determine its fair market value prior to such taking. A fair way to arrive at such market value is to determine what a purchaser is able and willing to pay and what a seller, not forced to sell, is willing to sell for.

"The rule is commonly expressed that fair market value means that sum of money for which the property could be sold by an owner who is ready, willing, and able to sell to a person who is ready, willing, and able to purchase for cash or terms equivalent to cash and neither the seller nor the buyer is under any compulsion to buy or sell.

### "Instruction No. 5

"In arriving at the amount of damages to be awarded to the defendants, you shall take into consideration the best and most profitable use and purpose to which the entire tract is adapted; and, if it is adaptable to a particular purpose which makes it more valuable for that purpose, you shall consider such purpose.

"In other words, compensation to the defendants must be reckoned and awarded from the standpoint of what they, the landowners, lose by the taking of a portion of his entire unit.

"In arriving at the amount of damages, it is your duty so far as possible, to make the defendants whole and to restore them to as good a position as they were in prior to the taking."

To the three instructions above set out the State made the following objections:

"The State does object to Instruction No. 3 upon the grounds and for the reason that the instruction does not differentiate between the land owned by these defendants and the lands upon which they are permitted to run by reason of certain lease permits and is confusing to the jury, and the term 'the entire tract' does not inform the jury as to whether the court refers to only the land owned by the defendants or all of the land which was discussed in the evidence,including land not owned by the defendants and over which they exercise no control except by right of sufferance of permit, and the same is not the proper measure of damages.

"Plaintiff excepts to Instruction No. 4 for all of the grounds and upon all of the reasons stated in the last previous objection and for the further reason that the same is not complete in that it only instructs the jury to find a fair market value prior to the taking. For the further reason that in view of the evidence now testified to and admitted by exhibits, the same does not instruct the jury in accord with the evidence."

"The State has an objection to Instruction No. 5 for the reason that the court again uses the words 'entire tract' without specifying whether the same is owned by the defendants or whether the land upon which the defendants are allowed to run by permit of sufferance is included or excluded, and for all of the reasons heretofore stated in the plaintiff's Exceptions to Instructions 3 and 4, and for the further reason that the same is not complete and instructs only as to the loss or

damage and does not include as to any benefits the jury may take into consideration that may be special to these defendants by reason of the road being constructed over and upon their lands."

By the use of the term "entire tract" in each of these three instructions the Court disregarded the fact that the two defendants held title to the various tracts separately. The instructions, therefore, were not a correct statement of the law applicable to the facts under the rule that separate parcels of land cannot be deemed contiguous because of unified or common use unless there is unity of ownership. Annotation 6 A.L.R.2d 1197-1237. Admittedly, the State's objections to the term "entire tract" were not based on lack of unity in title to the owned lands but because the term might mislead the jury to consider the "entire tract" to be the owned lands and the government permit lands, that is, the entire area used as a ranch by defendants. This presents the question whether the State made objections sufficient to direct the attention of the Court to error in the use of the term "entire tract."

SDC 33.1317 provides: "In charging the jury the Court shall instruct as to the law of the case * * *". Settlement of the instructions is required by SDC 33.1318 which provides: "It shall be insufficient to state generally that an instruction does or does not state the law, but it shall be necessary to specify clearly wherein any instruction, or part thereof objected to, is insufficient or does not state the law. * * No grounds of objection or exception to the giving or the refusing of an instruction shall be considered either on motion for new trial or appeal, unless same was presented to the Court upon the 'settlement' of such instruction." When no sufficient exception is taken to an instruction as required by statute it becomes the law of the case except when the question is presented by a motion for a directed verdict. Peterson v. Great American Insurance Co., 74 S.D. 334, 52 N.W.2d 479; Winburn v. Vander Vorst, 74 S.D. 531, 55 N.W.2d 609. Obviously, in a condemnation proceedings there is no opportunity to preserve a question of law by motion for a directed verdict. The damages must be determined by the

jury under instructions which should be adequate in guiding the jury to arrive at a proper verdict.

The record is replete with references to "our ranch unit", "operate ranch as a single unit", "this unit", "this ranch unit", "balanced unit", "your ranch", "your entire unit" and "run a joint ranch operation on the unit which is shown on this plat Exhibit A." At one point one of the defendants answered in the affirmative the question "your entire unit * * * consists of 7 or 8 thousand acres of your leased land plus 4 thousand some acres of your fee owned land." Each of the several witnesses for the defendants as to value as well as the defendants themselves, were permitted without objection to give the opinion that the value of the ranch was cut in two, or reduced in value 50 per cent. In the instructions above set out the Court stated, "The amount of damages to be awarded * * * in this case is the difference between the value of the entire tract before the portion is taken and its value after the same is taken"; also, "In arriving at the value of the entire tract prior to the taking, it may be necessary for you to first determine its fair market value prior to such taking", and further, "In arriving at the amount of damages you shall take into consideration the best and most profitable use and purpose to which the entire tract is adapted * * *. In other words, compensation to the defendants must be reckoned and awarded from the standpoint of what they, the landowners, lose by the taking of a portion of his entire unit."

Even if it be assumed that the State made no proper objection to the instructions on the ground that they did not correctly state the rule as to measuring consequential or severance damages to lands held in separate ownership, the objections did point out that the use of the term "the entire tract" was confusing and misleading, as in fact it appears to us have been especially when used in conjunction with the statement advising the jury to determine what the owners lost "by the taking of a portion of his entire unit." Was this a reference to consequential damages to the land owned or to the entire ranch unit? But whatever was intended, it was an in-

complete, inadequate, misleading and confusing statement as to any severance . damage upon which the jury was left to speculate without any pointing up of any of the factors involved except to "take into consideration the best and most profitable use and purpose to which the entire tract is adapted."

The instructions to the jury should be definite and certain as applied to the facts of the case. A term should not be so used that doubt can arise as to its meaning and application to the facts. 53 Am.Jur., Trial, § 545. To give misleading and confusing instructions which will tend to confuse the jury in the consideration of the issues, is misdirection. 53 Am.Jur., Trial, § 555; Mousel v. Widicker, N.D., 69 N.W.2d 783, 53 A.L.R.2d 884. The exceptions to the three instructions set out on the ground that the use of the term "the entire tract" was confusing and misleading, were sufficient compliance with SDC 33.1318 so as to permit the State to raise the error on appeal. Compare Federal Land Bank of Omaha v. Matson, 68 S.D. 538, 5 N.W.2d 314.

The defendants testified that the value of their land was $30.00 an acre without the grazing permits and $35 an acre with the grazing permits. The value of the 109.49 acres taken for highway purposes would be about $3,800 so that on the basis of the award of $38,250, the severance damage was fixed by the jury at over $34,000. In City of Bristol v. Horter, 73 S.D. 398, 43 N.W.2d 543, 546, the Court said: " 'A party whose land is taken under condemnation proceeding is entitled to recover, not only for the value of the land actually taken, but for the damage the remaining land sustains by reason of such taking, and that the true measure of damages in such case is the difference between the value of the farm or tract of land before the portion is taken and its value after the same is taken.' Chicago, M. & St. P. Ry. Co. v. Brink, 16 S.D. 644, 94 N.W. 422, 424; Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890." The Court in the instructions in this case stated such rule in general terms as applied to "the entire tract" and "the entire unit" with no guidance in measuring the severance damages to the owned lands by

virtue of the taking of a portion of the land for highway purposes.

We recognize that the defendants' land had added value because of the attached grazing permits but this value was limited by the nature of the permits which granted no interest in the government grazing lands except to permit grazing of a certain number of cattle and which permits could be withdrawn by the Government at any time or limited by the granting of easements for highways. What the court said in United States v. Jaramillo, 10 Cir., 190 F.2d 300, 302, is applicable to this case: "In determining the adaptability of the lands as a ranch, it was therefore proper to take into consideration the availability and accessibility of the permit land as an appurtenant element of value for ranching purposes, provided that consideration is also given to the possibility that the permits could be withdrawn or cancelled by the Government at any time without constitutional obligation to pay compensation therefor."

The case was submitted to the jury under the general formula of difference between the market value of "the entire tract" before the property was taken and the market value of the remainder after the property was taken with the additional statement that compensation should make the defendants whole and be awarded for the loss caused by a taking of a portion of "the entire unit." There was no elaboration as to the factors to be considered in measuring damages to the remaining land. The use of the terms "the entire tract" and "the entire unit" in applying the general formula of difference between the market value of the property before the taking and its market value after the taking without further direction as to the measure of damages to the remaining owned land amounted to misdirection as to the law concerning the only issue to be determined by the jury.

The judgment is reversed and a new trial ordered.

RENTTO, P. J., and SMITH, HANSON and BOGUE, JJ., concur.

BURNS, Circuit Judge, sitting for ROBERTS, J., disqualified.